## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIM ROSS KITKO,                              Civil Action

       Plaintiff,                         No.   2:21-cv-884

   v.

ALLEGHENY COUNTY AIRPORT
AUTHORITY,

       Defendant.                        JURY TRIAL DEMANDED

## CIVIL COMPLAINT

Plaintiff, Kim Ross Kitko, by undersigned counsel, files this Civil Complaint and in support alleges the following:

### I. Jurisdiction

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 1343(a)(4), Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. §216(b), incorporating by reference the Equal Pay Act of 1963, 29 U.S.C. §206(d); and 28 U.S.C. §§1331 and 1343.

### II. Administrative Remedies

2.    Plaintiff has satisfied all procedural and administrative requirements set forth in Title VII of the Civil Rights Act of 1964 and the Age discrimination in Employment Act, 29 U.S.C. §626 because:

    a.   Plaintiff filed a timely written charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") on December 22, 2020.

    b.   Plaintiff received the Notice of Right to Sue from the EEOC dated April 12, 2021.

    c.   This action was filed within 90 days of the receipt of the EEOC Notice of Right to Sue.

### III. Venue

3.      Venue is proper in the Western District of Pennsylvania, in that this action arises out of events that occurred in Allegheny County, Pennsylvania.

### IV. The Parties

4.      Plaintiff is a female individual who resides at 126 Hill Place Drive, McDonald, Pennsylvania 15057.

5.      At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and Fair Labor Standards Act.

6.      Defendant, Allegheny County Airport Authority, is a municipal authority, governed by a board appointed by the Allegheny County Chief Executive, charged with operating and managing Pittsburgh International Airport and Allegheny County Airport.

7.      Defendant's principal place of business is at Pittsburgh International Airport, Landside Terminal, 4th Floor Mezzanine, Pittsburgh, Pennsylvania 15231.

### V. Factual Background

8.      Plaintiff was employed as Vice President, Business Development from June 2018 until she was fired on July 2, 2020.

9.      Plaintiff's primary job duties included negotiating and managing all streams of revenue for the Allegheny County Airport Authority and also identifying opportunities for new business and revenue growth.

10.     When Plaintiff was hired, she asked if her starting salary was commensurate with other employees at the Vice President level, and was told it was; Plaintiff was also told her starting salary was "not negotiable."

11.     However, Plaintiff has since learned that several male Vice Presidents were earning more for performing substantially similar work.

12.     Plaintiff was consistently successful in meeting the objectives of her job, growing revenue, and presenting new opportunities for additional revenue growth to the organization.

13.     Chief Commercial Officer Eric Sprys, Plaintiff's manager and direct supervisor, however, often delayed decisions on her proposals and often never reached decisions.

14.     In fact, in "executive coaching" sessions provided by a consultant, one of the areas for improvement identified for Mr. Sprys was "making decisions."

15.     Plaintiff was directed to "help" Mr. Sprys make decisions.

16.     Despite Plaintiff's good performance and consistent efforts to put forth ideas that would grow revenue for the Airport, she was terminated for "poor performance" within mere weeks of receiving performance bonus pay and achieving an overall "Meets Expectations" rating on her performance review by Mr. Sprys-in spite of several unfair negative comments he made about Plaintiff within the Airport Authority.

17.     Any deficiencies in Plaintiff's performance were directly related to Mr. Sprys hindering her ability to achieve greater revenue for the Airport Authority by delaying decisions and presentation of her proposals for the Senior Lead Team (SLT) while continuing to add projects and responsibilities to the Business Development department.

18.     Plaintiff was required to communicate her ideas and initiatives through Mr. Sprys to the SLT while other select male Vice Presidents were permitted to attend the SLT meetings and interact and communicate directly with the CEO.

19.     Mr. Sprys also communicated all new project requests, priorities and organizational focus from the SLT to Plaintiff; but he often related the messages incompletely, inaccurately or blocked certain proposals by Plaintiff from being presented, which reflected poorly on her.

20.     Plaintiff complained to both Mr. Sprys and the executive coach, requesting that she be given a "seat at the table" to ensure her department's alignment with the SLT (particularly the CEO) and to present her ideas directly rather than communicating through Mr. Sprys.

21.     Plaintiff made a similar complaint to the CEO, Christina Cassotis, concerning her department's alignment with the Airport Authority's objectives and to avoid further wasteful spending on consultants, but was denied and told that she had to talk to Mr. Sprys about her concerns.

22.     One of Plaintiff's younger, male direct-reports, however, enjoyed frequent direct access to the CEO, other higher executives, and select Board members.

23.     The CEO advised Plaintiff that she was not to approach any Board member without contacting the CEO first.

24.     Plaintiff was also directed by Mr. Sprys to promote the same younger, male direct report and expand his responsibilities despite this younger man's lack of experience in the business.

25.     Throughout Plaintiff's tenure, when there were vacancies within the department, Plaintiff's staffing plans, new-hire recommendations, personnel changes, and recruiting

suggestions were delayed, ignored, or flatly rejected by Mr. Sprys and the Chief Human Capital Officer, Lisa Naylor.

26.    Plaintiff was told that staffing and recruiting were not her job and would be exclusively handled by Ms. Naylor's department: however, the vacancies remained.

27.    Despite the recognition of Mr. Sprys' inability to complete projects, make decisions, work with Ms. Naylor to staff a department or provide clear, concise and timely direction to his direct reports, he was not terminated, demoted, or otherwise adversely affected.

28.    Following Plaintiff's termination, the Airport Authority assigned her job functions to a younger, male Vice President with substantially less experience and qualifications.

29.    The Airport Authority has treated other male executives more favorably, by assigning lighter work-load, or by demoting or reassigning male executives who had performance deficiencies instead of terminating them.

30.    For at least the past year, the Airport Authority has hired and promoted much younger individuals to fill executive roles.

## VI. CLAIMS

### Count I
### Title VII: Gender Discrimination

31.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 30 as if fully restated herein.

32.    Defendant acting through its administrators, agents and employees, imposed on the Plaintiff, because of her sex, terms and conditions of employment different from and less favorable than those imposed on male employees and, because of her sex, terminated Plaintiff for no reason related to her job performance.

5

33.     The Defendant's conduct as set forth above constitutes an intentional and willful violation of the Equal Employment Opportunity Act, 42 U.S.C. §2000e et seq.

34.     As a direct and proximate result of the unlawful conduct of the Defendant, Plaintiff was deprived of her job and has lost income in the form of back and front wages, bonuses, back and front fringe benefits, and other payments that were unlawfully withheld, retirement contributions, medical and life insurance, medical insurance premiums, medical reimbursements, and lost future job opportunities.

35.     As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff has suffered mental anguish, pain, suffering, inconvenience and humiliation.

36.     As a result of the Defendant's outrageous, unjustified and unlawful conduct, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant for violation of Title VII as follows:

a.     A declaratory judgment that the practices complained of herein are unlawful under Title VII;

b.     Back and front pay, lost bonuses, and other damages in the form of lost wages and prejudgment interest to the fullest extent permitted under the law;

c.     Compensatory damages for her pain, suffering, distress, anxiety, humiliation and inconvenience;

d.     Litigation costs, expenses, and reasonable attorneys' fees to the fullest extent permitted under the law; and

e.     Such other legal and equitable relief as the Court deems just and proper.

**Count II**
**ADEA: Age Discrimination**

37.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 36 as if fully restated herein.

38.     As a result of the foregoing, Plaintiff was fired and otherwise treated unfavorably because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623(a).

39.     Defendant's discharge and mistreatment of Plaintiff because of her age was willful.

40.     As a direct and proximate result of Defendant's discharge of Plaintiff, she suffered damages, including lost wages and benefits.

WHEREFORE, Plaintiff demands judgment against Defendant for violation of the ADEA as follows:

      a.     A declaratory judgment that the practices complained of herein are unlawful under the ADEA;

      b.     Back and front pay, lost bonuses, and other damages in the form of lost wages and prejudgment interest to the fullest extent permitted under the law;

      c.     Liquidated damages in an amount equal to the amount of wags due and owing Plaintiff as provided by 29 U.S.C. §§626(b) and 216(b);

      d.     Compensatory damages for her pain, suffering, distress, anxiety, humiliation and inconvenience;

      e.     Litigation costs, expenses, and reasonable attorneys' fees to the fullest extent permitted under the law; and

      f.     Such other legal and equitable relief as the Court deems just and proper.

### Count III
### Equal Pay Act

41.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 40 as if fully restated herein.

42.     During the period June 2018 to July 2, 2020, Defendant violated the Equal Pay Act, 29 U.S.C. §206(d), by paying wages to Plaintiff, a woman, at rates less than the rates it paid male senior management in the same establishment for equal work on jobs requiring equal skill, effort and responsibility, and performed under similar working conditions.

43.     Defendant's violation of the Equal Pay Act was willful.

WHEREFORE, Plaintiff demands judgment against Defendant and damages as follows:

a.     The difference between the compensation actually received by Plaintiff and the wages paid to male employees for equal work within the meaning of the Equal Pay Act;

b.     Liquidated damages, in an amount equal to the back wages due and owing, pursuant to 29 U.S.C. §§216(b), and 206(d)(3);

c.     An award of prejudgment interest;

d.     An award of reasonable attorney fees and costs, pursuant to 29 U.S.C. §216(b); and

e.     Any and all such other additional relief as the Court finds to be just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL COUNTS**

Respectfully submitted,

**ROTHMAN GORDON, P.C.**

/s/ James W. Carroll, Jr.
James W. Carroll, Jr.
Pa. I.D. #21830
jwcarroll@rothmangordon.com

310 Grant Street
Third Floor, Grant Building
Pittsburgh, PA 15219
(412) 338-1100

8

*Attorney for Plaintiff*

4815-2664-5489, v. 2

9